Hearing Date & Time

**July 21, 2015 at 3:00 p.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

Chapter 7

**ADAM SELBST**                                              Case No. 14-41231-cec

                                          Debtor.
-------------------------------------------------------X
**ADAM SELBST**

                              Plaintiff,                   Adv. Proc. No. 14-01065-cec

             -against-

**UNITED STATES OF AMERICA,**
**DEPARTMENT OF THE TREASURY,**
**INTERNAL REVENUE SERVICE,**

                              Defendant.
-------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORTOF
# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN
# <u>FAVOR OF PLAINTIFF</u>

                    Shafferman & Feldman, LLP
                    Joel Shafferman (JS-1055)
                    137 Fifth Avenue, 9th Floor
                    New York, New York 10010
                    (212) 509-1802

# TABLE OF CASES, STATUTES AND AUTHORITIES

**Cases**

*American Film Technologies, Inc.,* 987 F.2d 142, 246 (2d Cir. 1993)í  í  í  í  í  í  í  í  í 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249)(quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968) ..............................................................................................10

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 366 F.3d 692, 700 (9th Cir.2004)*.......................................................................................................................19

*Beard v. Commissioner*, 82 T.C. 766 (1984) aff'd, 793 F.2d 139 (6th Cir. 1986) .......................13

*Beard v. Commissioner,* 82 T.C. 766 (1984), *aff'd per curiam,* 793 F.2d 139 (6th Cir.1986) .....11

*Beard v. Commissioner,* 82 T.C. at 777 ........................................................................................12

*Beard*, 82 T.C. at 766..................................................................................................................25

*Bell v. United States of America,* Adv. No. 3:12 ap 00693PMG (Bankr. M.D. Fla. 2013)..........22

*Brown v. Mass. Dep't of Revenue (In re Brown), 489 B.R. 1, 5–6 (Bankr.D.Mass.2013) aff'd sub nom. Gonzalez v. Mass. Dept. of Rev. (In re Gonzalez), 506 B.R. 317 (1st Cir. BAP 2014) and aff'd, 2014 WL 1815393 (1st Cir. BAP Apr. 3,2014)*............................................................18

*Brown v. Mass. Dep't of Revenue* (In re Brown), 489 B.R. 1, 5ó6 Bankr.D.Mass.2013), aff'd on other grounds sub nom. *Gonzalez*, 506 B.R. 317 ...................................................................24

*Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F. 2d 51, 55 (2d Cir. 1991)........................8

*Casano v. IRS (In re: Casano)*, 473 B.R. 504, 507 (Bankr. E.D.N.Y.)......................................17

*Colsen v. United States (In re Colsen),* 446 F.3d 836, 839 (8th Cir. 2006)................................11

*Colsen,* 446 F.3d at 840...............................................................................................................12

*Console v. C.I.R.*, 291 Fed.Appx. 234, 237 (11th Cir. 2008).......................................................10

*Creekmore v. Internal Revenue Service (In re Creekmore)*, 401 B.R. 748 *(Bankr.N.D.Miss.2008)* ...................................................................................................................................................17

*Edelson v. Comm'r,* 829 F.2d 828, 834 (9th Cir.1987) ...............................................................15

*Gleason v. Thaw*, 236 U.S. 558, 562 (1915) ................................................................................23

*Grogan v. Garner*, 498 U.S. 279 (1991)........................................................................................9

*Hindenlang*, 164 F.3d at 1033 .....................................................................................................26

*Hindenlang*, 164 F.3d at 1034ó635 .............................................................................................12

*In re Briggs*, 511 B.R. at 711-12 ................................................................................................22

*In re Colsen*, 311 B.R. 765 (Bankr. N.D. Ia. 2004)......................................................................12

*In re Crawley*, 244 B.R. 121 (Bankr N.D. Ill. 2000) ..................................................................12

*In re Crawley,* 244 B.R. 121 (Bankr. N.D. Ill. 2000) ..................................................................11

*In re Izzo*, 287 B.R. 158,162 (Bankr. E.D. Mich. 2002)..............................................................13

*In re Klein*, 312 B.R. 443 (S.D. Fla. 2004) ................................................................................13

*In re Martin,* 508 B.R. 717, 723 E.D.Ca.2014)...........................................................................12

*In re Martin,* 508 B.R. at 723 .....................................................................................................12

*In re Martin,* 508 B.R. at 724 .....................................................................................................13

*In re Martin,* 508 B.R. at 725 .....................................................................................................16

*In re Martin*, 508 B.R. at 727 .....................................................................................................20

*In re Martin*, 508 B.R. at 727 (citing *In re: Wogoman*, 475 B.R. at 248649 ..............................19

*In re Martin*, 508 B.R. at 729 .............................................................................................20

*In re Martin,* 508 B.R. at 731 ..............................................................................................25

*In re Martin,* 508 B.R. at 732 ........................................................................................27, 28

*In re Martin,* 508 B.R. at 733 ..............................................................................................28

*In re Masterwear Corporation, et. al*, 233 B.R. at 272 ...........................................................9

*In re Masterwear Corporation, et. al. (Masterwear, et. al. v. Angel Frankel, P.C.*), 233 B.R.
   266, 272 (Bankr. S.D. 1999)..............................................................................................8

*In re Maxwell Newspapers, Inc.,* 151 B.R. 63, 67 (Bankr. S.D. N.Y. 1993)................................8

*In re McGrath,* 217 B.R. 389 (Bankr. N.D. N.Y. 1991)...........................................................13

In re Morris, 223 F.3d 548 (7th Cir. 2000) ............................................................................9

*In re Nunez,* 232 B.R. 778 (BAP 9th Cir. 1999)....................................................................12

*In re Payne,* 431 F.3d 1055, 1057 (7th Cir.2005)....................................................................12

*In re Pierchoski*, 243 B.R. 267 (W.D. Pa. 1999), *rev'd and rem'd, In re Pierchoski*,220 B.R. 20
   (Bankr. W.D. Pa. 1998) ....................................................................................................12

*In re Rhodes*, 498 at 362 ....................................................................................................22

*In re Rhodes*, 498 B.R. at 369 .............................................................................................25

*In re Savage*, 218 B.R. 126 (BAP 10th Cir. 1998) .................................................................12

*In re:  Briggs*, 511 B.R. 707, 716-719 (Bank. N.D. Ga. 2014)..................................................24

*In re:  Briggs*, 511 B.R. at 716-719 .....................................................................................25

*In re: Briggs, 511 B.R .at 712* ...........................................................................................15

*In re: Briggs*, 511 B.R. 707, 712 (Bankr. N.D.Ga. 2014)........................................................15

*In re: Briggs*, 511 B.R. at 714 .....................................................................................18, 19

*In re: Briggs, 511 B.R. at 715* ...........................................................................................20

*In re: Briggs, 511 B.R. at 715* ...........................................................................................18

*In re: Briggs*, 511 B.R. at 719 ............................................................................................29

*In re: Casano* ...................................................................................................................17

*In re: Colsen*, 446 F.3d 836, 840-41 (8th Cir. 2006)..........................................................25, 28

*In re: Fahey,* 779 F3d 1, 4-11 (1st Cir. 2015) ......................................................................17

*In re: Martin,* 508 B.R. at 725...........................................................................................16

*In re: Martin,* 508 B.R. at 728...........................................................................................20

*In re: Martin,* 508 B.R. at 730...........................................................................................24

*In re: Martin,* 508 B.R. at 731...........................................................................................22

*In re: Rhodes*, 498 B.R. at 362 .....................................................................................15, 16

*In re: Rhodes*, 498 B.R. at 362. ..........................................................................................16

*In re: Rhodes,* 498 B.R. at 366 ...........................................................................................20

*In re: Rhodes*, 498 B.R. at 369 ...........................................................................................25

*In re: Wogoman*, 475 B.R. at 248649 ...................................................................................18

*McCoy v. Miss. State Tax Comm'n (In re McCoy)* .................................................................17

*Mecury Time, Inc. v. Gruen Marketing Corporation, London Pacific Life & Annuity Company,*
   1999 U.S. Dist. LEXIS 8026, *31 (E.D. N.Y. 1999)...........................................................9

*Mim v. United States of America*, Adv. No. 3:12 ap 00696P MG (Bankr, M.D. Fla. 2013) ........22

*Moroney v. United States (In re Moroney),* 352 F.3d 902, 905 (4th Cir.2003) ...........................11

*In re Payne*, 331 B.R. 358 (N.D. Ill. 2005) ...............................................................................12

*Payne,* 431 F.3d at 1057 ............................................................................................................12

*Payne,* 431 F.3d at 1061662 ......................................................................................................12

*Rhodes v.United States (In re Rhodes)*, 498 B.R. 357, 369 (Bankr.N.D.Ga.2013) .....................13

*Sakkis v.Comm'r*, 100 T.C.M. (CCH) 459, at *768 (2010) .........................................................27

*Savage v. IRS (In re Savage)*, 218 B.R. 126,132 (10th Cir. BAP 1998) .....................................15

*Shugrue v. Pension Benefit Guar. Corp. (In re Ionosphere Clubs, Inc.)*, 147 B.R. 855, 860 (Bankr. S.D. N.Y. 1992) .........................................................................................................8

*Snoke v. Riso (In re Riso),* 978 F.2d 1151, 1154 (9th Cir.1992) ..................................................9

*United States v. Hatton (In re Hatton),* 220 F.3d 1057, 1060661 (9th Cir.2000) .......................11

*United States v. Hindenlang (In re Hindenlang),* 164 F.3d 1029, 1033634 (6th Cir.1999)) ........11

*United States v. Nunez (In re Nunez),* 232 B.R. 778, 783 (9th Cir. BAP 1999) ..........................11

*Wyler v. U.S.*, 725 F. 2d 156, 160 (2d Cir. 1983) ........................................................................9

*Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) .........................................9

*Zellerbach Paper*, 293 U.S. 172, 180 (1934) .............................................................................27

**Statutes**

§ 523(a)(1)(B) .............................................................................................................................20

§ 523(a)(1)(B)(i). ........................................................................................................................14

§ 523(a)(1)(B)(ii) ........................................................................................................................20

§523(a)(1)(B)(i) ............................................................................................................................7

11 U.S.C. §507(a)(8)(A)(ii) .........................................................................................................10

11 U.S.C. §523(a)(1)(B) ...............................................................................................................7

11 U.S.C. §523(a)(1)(B)(ii) ..........................................................................................................7

26 U.S.C. §6020(b) .....................................................................................................................22

507(a)(8)(A)(i) ............................................................................................................................10

523(a)(1)(B)(i) ......................................................................................................................17, 30

523(a)(1)(B)(ii) ...........................................................................................................................20

BAPCPA, Pub.L.No. 109-8, § 714, 119 Stat. at 128629 ..............................................................13

Federal Rule Civil Procedure 56(c) ..............................................................................................8

IRC § 6020(a) .............................................................................................................................19

IRC § 6201(a)(1) .........................................................................................................................27

IRC §6020(a), *728 (b)(1) ..........................................................................................................19

Section 523(a)(*) ........................................................................................................................29

Section 523(a)(1)(A) ...................................................................................................................10

section 523(a)(1)(B)(i) ...........................................................................................................15, 17

Section 6020 of the Internal Revenue Code .................................................................................19

*Wogoman v. IRS (In re Wogoman), Case No. 11–11044–SBB, Adv. No. 11–01117–SBB, 2011 WL 3652281, at *5 (Bankr.D.Colo.Aug. 19, 2011), aff'd on other grounds, 475 B.R. 239 (10th Cir. BAP 2012)* ....................................................................................................................15

4

**Other Authorities**

I.R.S. Chief Couns. Notice CCó2010ó016, 2010 WL 3617597 (Sept. 2, 2010) ......................... 21

Webster's New Explorer Encyclopedic Dictionary 1561 (Federal Street Press 2006) ................. 27

**Rules**

Fed. R. Civ. P. 56(e) ...................................................................................................................... 8

Federal Rule of Bankruptcy Procedure 7056 ............................................................................. 8

**Regulations**

Treas. Reg. § 1.6011ó1(b) .......................................................................................................... 28

## PRELIMINARY STATEMENT

Adam Selbst, the plaintiff through his counsel, pursuant to Rule 7056, respectfully

submits this Memorandum of Law and Fact in support of the Plaintiffós Motion for Summary

Judgment in the Plaintiff's favor**1**.  Plaintiff submit that no genuine issue exists as to any material facts and that the Plaintiff is entitled to a judgment in its favor against the defendant, United States of America, Department of the Treasury, Internal Revenue Service ("IRS").

## FACTS

The facts giving rise to this motion are set forth in the accompanying Affidavit of Adam Selbst in Support Of Summary Judgment, sworn to on June 4, 2015 (the "Selbst Affidavit"), and the accompanying Plaintiff's Statement of Undisputed Facts which are incorporated herein by reference herein.**2**

## ISSUE

Whether a "dummy" or substitute for return ("SFR") tax assessment against a debtor precludes that particular debtor, as a matter of law, from later "filing" or "giving" a tax return to Internal Revenue Service ("IRS") which effectively commences the two (2) year period running for purposes of 11 U.S.C. §523(a)(1)(B)(the " Two Year Rule")?

## SUMMARY OF ARGUMENT

---

1 This Memorandum of Law is also submitted in opposition to the Motion filed by the United States of America, Department of the Treasury, Internal Revenue Service Seeking Summary Judgment filed with this Court on May 8, 2015 (ECF#29).

2 Capitalized terms not defined herein shall have the meaning ascribed to them in the Selbst Affidavit and Plaintiff's Statement of Undisputed Facts dated June 5, 2015.

It is undisputed that in September 2010, the Debtor "filed" or "gave" to the IRS two Form 1040s for the 2006 and 2007 tax years. Those documents were filed or given to the IRS more than two years before the commencement of the Debtor's Chapter 7 case.

The IRS contends that the substantially all of the Debtor's tax debt for 2006 and 2007 is excepted from his discharge under §523(a)(1)(B)(i) because the Debtor did not file his tax returns for 2006 and 2007 until after the IRS made its assessments and began its collection efforts. The IRS offers two theories in support of its position. First, according to the IRS, when an assessment is made, the resulting "debt" is based on the assessment, not upon the subsequently filed tax return. Therefore, this tax debt cannot be dischargeable under §523(a)(1)(B)(i) if it is not actually based on a filed tax return. Alternatively, the IRS contends that a Form 1040, filed after an assessment is made and collection efforts are initiated, does not constitute a "return" within the meaning of § 523(a)(1)(B) for purposes of determining dischargeability. The IRS has not raised any issues with the form and content of the Debtors' Form 1040s.  The IRS only takes issue with the timing of the Form 1040s' filing in relation to the assessments and collection activity**.**

For the reasons described below, the IRS' position is not consistent with the Bankruptcy Code, and if adopted, would read the two year rule of 11 U.S.C. §523(a)(1)(B)(ii) out of the Code. Moreover, as will be described below, this Court should find and conclude that the Debtor's Form 1040 tax returns for the years 2006 and 2007 were "returns" within the meaning of §523(a)(1)(B)(i) and §523(a)'s hanging paragraph. This Court should decline to adopt either the recent Circuit Courts' "one-day-late rule" (which has been rejected by the IRS) or the Sixth Circuit's post-assessment approach urged by the IRS to define what constitutes a tax return for purposes of

7

determining dischargeability of the tax debt. Instead, this Court should adopt the Eighth Circuit's no-time-limit interpretation to conclude that the örequirements of applicable nonbankruptcy law (including applicable filing requirements)ö do not include a temporal restriction.

# ARGUMENT

## Standard for Summary Judgment

Federal Rule Civil Procedure 56(c), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, governs summary judgment motions. Under the Rule, the Court will grant judgment if the submissions show that no genuine material issues of fact exist, and the movant is entitled to judgment as a matter of law. *Accord, Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F. 2d 51, 55 (2d Cir. 1991); *In re Maxwell Newspapers, Inc.,* 151 B.R. 63, 67 (Bankr. S.D. N.Y. 1993); *Shugrue v. Pension Benefit Guar. Corp. (In re Ionosphere Clubs, Inc.)*, 147 B.R. 855, 860 (Bankr. S.D. N.Y. 1992). A material fact is genuine öif the evidence is such that a reasonable jury could return a verdict for the nonmoving party.ö *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant carries the initial burden of demonstrating the absence of genuine factual issues, the nonmoving party cannot rely on pleadings or mere denials, and must set forth specific facts that show triable issues. *In re Masterwear Corporation, et. al. (Masterwear, et. al. v. Angel Frankel, P.C.*), 233 B.R. 266, 272 (Bankr. S.D. 1999) referring to Fed. R. Civ. P. 56(e) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact, *In re*

*Masterwear Corporation, et. al*, 233 B.R. at 272 (citing *Matsushita Elec. v. Zenith* 475 U.S. at 586; *Brass v.American Film Technologies, Inc.,* 987 F.2d 142, 246 (2d Cir. 1993), and may not rely solely on self-serving conclusory statements. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993); *Wyler v. U.S.*, 725 F. 2d 156, 160 (2d Cir. 1983). "In the language of the Rule, the nonmoving party must come forward with -specific facts showing that there is a genuine issue for trial." *Mecury Time, Inc. v. Gruen Marketing Corporation, London Pacific Life & Annuity Company*, 1999 U.S. Dist. LEXIS 8026, *31 (E.D. N.Y. 1999) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586). The non- moving party cannot survive a properly supported motion for summary judgment by resting on his pleadings "without offering -any significant probative evidence tending to support the complaint." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249)(quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)).

## **Burden of Proof**

In order to effectuate the "fresh start" policy of the Bankruptcy Code, exceptions to discharge are narrowly construed against the creditor and liberally in favor of the debtor. When a dispute arises, these exceptions to discharge should be strictly construed against the creditor in light of the "fresh start" policy underlying the Bankruptcy Code. *See Snoke v. Riso (In re Riso),* 978 F.2d 1151, 1154 (9th Cir.1992). In re Morris, 223 F.3d 548 (7th Cir. 2000). The burden is on the person claiming non-dischargeablity of a debt, with the appropriate standard of proof being a preponderance of the evidence." *Grogan v. Garner*, 498 U.S. 279 (1991). In this adversary proceeding, the IRS has the burden of proof; and the standard is by a preponderance of the evidence. *See, e.g., In re Crawley,*

9

244 B.R. 121 (Bankr. N.D. Ill. 2000) (party seeking to establish exception to discharge of debt bears the burden of proof); *Grogan v. Garner*, 498 U.S. 279 (1991).

## I.

### This Court Should Grant Summary Judgment in Favor of the Debtor Discharging His Tax Liability to the IRS for Tax Years 2006 and 2007

**<u>Statutory Framework</u>**

Section 523(a)(1)(A) excepts from discharge debt[s] from taxes of a kind described in section 507(a)(8). Section 507(a)(8), in turn, gives priority to income taxes ðfor which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.ö The combined effect of these two provisions is to except from discharge any income taxes for which a return was due within the three years prior to the bankruptcy filing. *Console v. C.I.R.*, 291 Fed.Appx. 234, 237 (11th Cir. 2008).

There are three key requirements for discharging tax obligations: the three-year rule set forth in section 507(a)(8); the 240-day rule; and the two-year rule. The three-year rule, under 11 U.S.C. section 507(a)(8)(A)(i), provides that the tax at issue must be at least three years old. This three year period is calculated from the most recent date the tax return was due for the tax year, including any filed extensions. The 240-day rule, under 11 U.S.C. §507(a)(8)(A)(ii), states that the tax in question must have been assessed more than 240 days before the bankruptcy petition was filed. Finally, under the two- year rule, pursuant to 11 U.S.C. §523(a)(1)(B)(ii), the tax return must have been filed at least two years prior to the petition date.

Until recently, the two-year rule had routinely been interpreted to permit the discharge of taxes if: (1) a debtor had filed a tax return, even if late; (2) the tax return had been on file for at least two years before the filing of the bankruptcy petition, and (3) all of the other bankruptcy discharge rules were met (e.g., no fraud, no evasion, etc.). In cases involving section 523(a)(1)(B)(i), when the debtor has filed a Form 1040 or other document which purports to report his or her tax liability, the focus shifts to the question of what constitutes a filed "return," with "[t]he IRS [having] the ultimate burden of proof as to whether a return has been filed," *United States v. Nunez (In re Nunez),* 232 B.R. 778, 783 (9th Cir. BAP 1999).

Prior to enactment of the BAPCPA in 2005, the term "return" was undefined by the Bankruptcy Code. As a result, many courts, including the Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), adopted the four-element test developed by the tax court in *Beard v. Commissioner,* 82 T.C. 766 (1984), *aff'd per curiam,* 793 F.2d 139 (6th Cir.1986), to determine what constitutes a tax "return" for purposes of §523(a)(1)(B). *In re Martin,* 508 B.R. 717, 723 E.D.Ca.2014)(citing, *United States v. Hatton (In re Hatton),* 220 F.3d 1057, 1060661 (9th Cir.2000); *Colsen v. United States (In re Colsen),* 446 F.3d 836, 839 (8th Cir. 2006); *In re Payne,* 431 F.3d 1055, 1057 (7th Cir.2005); *Moroney v. United States (In re Moroney),* 352 F.3d 902, 905 (4th Cir.2003); *United States v. Hindenlang (In re Hindenlang),* 164 F.3d 1029, 1033634 (6th Cir.1999)).

Relying on Supreme Court precedent, the tax court in *Beard* set forth the requirements for a valid tax return (the "Beard Test"). Under the *Beard* Test a document submitted to the IRS by a taxpayer qualifies as a return if it: (1) purports to be a return; (2) is executed under

penalty of perjury; (3) contains sufficient data to calculate the tax liability; and (4) represents an honest and reasonable attempt to satisfy the requirements of the tax law. *Beard v. Commissioner,* 82 T.C. at 777. In pre-BAPCPA nondischargeability cases, the dispute generally focused on the fourth *Beard* Test element, and the courts tended to disagree on whether this "honest-and-reasonable-attempt" inquiry incorporates the debtor's delinquency (i.e., whether the tax return was untimely filed and the reasons for its untimeliness) or is limited to the face of the purported return (i.e., the form and content of the documents filed). *In re Martin,* 508 B.R. at 723. *Compare Colsen,* 446 F.3d at 840 (considering face of the documents only), *and Payne,* 431 F.3d at 1061‒62 (Easterbrook, J., dissenting), *with Payne,* 431 F.3d at 1057‒58 (majority opinion) (considering timeliness of the return), *Moroney,* 352 F.3d at 906, *and Hindenlang,* 164 F.3d at 1034‒35.

The clear majority view of pre-BAPCPA cases held that a taxpayer or debtor who filed a proper tax return after the IRS made a SFR tax assessment starts the 2-year period for determining dischargeability of the debt upon the filing of his or her Form 1040, U.S. Individual Income Tax return. These courts held expressly or implicitly that the subsequently filed Form 1040, U.S. Individual Income Tax Return, constitutes a return for purposes of section 523. *In re Savage*, 218 B.R. 126 (BAP 10th Cir. 1998); *In re Nunez*, 232 B.R. 778 (BAP 9th Cir. 1999); *In re Klein*, 312 B.R. 443 (S.D. Fla. 2004); *In re Payne*, 331 B.R. 358 (N.D. Ill. 2005); *In re Colsen*, 311 B.R. 765 (Bankr. N.D. Ia. 2004); *In re Izzo*, 287 B.R. 158,162 (Bankr. E.D. Mich. 2002); *In re Crawley*, 244 B.R. 121 (Bankr N.D. Ill. 2000); *In re Pierchoski*, 243 B.R. 267 (W.D. Pa. 1999), *rev'd and rem'd, In re Pierchoski*,220 B.R. 20 (Bankr. W.D. Pa. 1998); *In re McGrath*, 217 B.R. 389 (Bankr.

N.D. N.Y. 1991).

With enactment of the BAPCPA in 2005, Congress attempted to clarify the meaning of the term "return" by adding a "hanging paragraph" to the end of section 523(a) (the "Hanging Paragraph"). *In re Martin,* 508 B.R. at 724 (citing BAPCPA, Pub.L.No. 109-8, § 714, 119 Stat. at 128‐29). This Hanging Paragraph provides:

> [f]or purposes of this subsection, the term "return" means a return that *satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements).* Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.
> § 523(a) para. (emphasis added).

The Hanging Paragraph adopts, by reference, the criteria found in previous nonbankruptcy case precedent namely, the four (4) part *Beard* test, as articulated by the United States Tax Court in *Beard v. Commissioner*, 82 T.C. 766 (1984) aff'd, 793 F.2d 139 (6th Cir. 1986)‐and it clarifies the law as to what does not constitute a return i.e., a 26 U.S.C. § 6020(b) document prepared by IRS. Specifically, by incorporating the reference to "applicable nonbankruptcy law," Congress expressed its intent to codify the majority rule of pre BAPCPA case law. *Rhodes v. United States (In re Rhodes)*, 498 B.R. 357, 369 (Bankr.N.D.Ga.2013).

Section 523(a)(1)(B), as amended by BAPCPA, also expanded the requirement, besides being a "return" as discussed above, to provide that being furnished or "given" is sufficient. By adding the terminology that a return [or equivalent report or notice] may be "filed" or "given," this avoids any argument as to whether a taxpayer "filed" a return. Tax attorneys or accountants have

been reluctant or resistant for years to file late Forms 1040, U.S. Individual Income Tax Return, through a Revenue Officer who may be currently dealing with taxpayer, as the furnishing of a particular return or returns may not be deemed "properly filed" under I. R.C. § 6091. In a case where returns had not been filed, Revenue Officers routinely demand that the returns be filed through them. Prior to the enactment of BAPCPA, the IRS could make a technical argument that this did not constitute a "filed" return under the IRC and related Regulations. With the expanded language under BAPCPA, this should no longer an issue, at least in the bankruptcy area.

**The IRS Right to Payment Accrued**
**When the Taxes Became Due, Not**
**When It Formally Assessed the Debt**

The IRS' first argument in its motion for summary judgment is that the Debtor's tax debt is nondischargeable under section 523(a)(1)(B)(i) because the underlying "debt" is established by the IRS's assessments, rather than the Form 1040s that the Debtor subsequently filed. The IRS attempts to force a distinction between a tax liability based upon an assessment and a tax liability based upon a subsequently filed document, in this case, the Debtor's Form 1040s for 2006 and 2007. The IRS posits that it does not matter whether the Debtor filed the Form 1040s after the IRS's assessments had been made because the assessments had already created a legally enforceable "debt" that carries the force of a judgment.

If courts accept the IRS's argument, then there would be no need for a court to ever determine whether a post assessment Form 1040 qualifies as a "return" within the meaning of section 523(a)(1)(B) and the Hanging Paragraph. The subsequently filed Form 1040 would be irrelevant

14

because the "assessed debt" would independently constitute a tax debt "with respect to which a return

... was not filed or given." § 523(a)(1)(B)(i).

The IRS has cited only one case to support this position. *Wogoman v. IRS (In re Wogoman), Case No. 11–11044–SBB, Adv. No. 11–01117–SBB, 2011 WL 3652281, at \*5 (Bankr.D.Colo.Aug. 19, 2011), aff'd on other grounds, 475 B.R. 239 (10th Cir. BAP 2012).* Conversely, a number of courts have disagreed with the IRS on this issue under nearly identical facts. See, *In re: Briggs, 511 B.R .at 712; In re Martin,* 508 B.R. at 725; *In re: Rhodes,* 498 B.R. at 362= *see also Savage v. IRS (In re Savage),* 218 B.R. 126,132 (10th Cir. BAP 1998) (pre BAPCPA). The bankruptcy court in *Rhodes* succinctly disposed of the IRS's argument:

> The statutory definitions of "debt" and "claim" focus on the nature and source of the debt (federal income tax liability), not the mechanism to determine the debt (assessment versus return). Under these definitions, a debtor has a "debt" when a right to payment accrues, regardless of how or when the extent of the debtor's liability becomes fixed or due.
>
> At the end of each [taxable year], the United States had a right to payment of income tax for [the] year (although unmatured and unfixed), and the Debtor was liable for the tax at the time. Thus, the Debtor had a debt that existed regardless of the Debtor's filing of the return or the IRS's assessment. The distinction between assessment and return is not relevant to the existence of a "debt" for bankruptcy purposes or to the dischargeability inquiry under §523(a)(1)(B).

*In re: Rhodes,* 498 B.R. at 362. *498 B.R. at 362 (emphasis in original); cf. Edelson v. Comm'r, 829 F.2d 828, 834 (9th Cir.1987) ("[T]ax liabilities, though unassessed, are deemed obligations due and owing at the close of the taxable year.").* The IRS'position is incorrect since it "conflates the right to payment with the right to *collect* payments." *In re: Briggs*, 511 B.R. 707, 712 (Bankr. N.D.Ga. 2014).

15

At the end of the 2006 tax year, the IRS had a right to payment of the Debtor's income taxes, and the Debtor was liable when the taxes became due, April 15, 2007.  At the end of the 2007 tax year, the IRS had a right to payment of the Debtor's income taxes, and the Debtor was liable when the taxes became due, April 15, 2008.  *See id*. The Debtor's underlying debt to IRS, although unfixed, thus existed and was enforceable regardless of when the IRS later assessed the amount of debt or when the Debtor filed his late return. *See*, *In re: Martin*, 508 B.R. at 725 (citing *In re: Rhodes*, 498 B.R. at 362). The fact that the IRS did not have the right to collect on the debt until it was formally assessed does not change the fact that the right to payment existed. *See In re: Briggs, 511 B.R .at 712.*

**The Debtor's Late Filed Forms 1040**
**Are Returns that Satisfy the "applicable**
**filing requirements" of the Hanging**
**Paragraph of Section 523(a)(*)**

The IRS contends that the Debtor's 2006 and 2007 late filed returns do not constitute a "return" for discharge purposes under section 523(a)(1)(B)(i).  Because section 523(a)(1)(B)(i) only bars discharge when a "return or equivalent notice" is not filed, the IRS position is incorrect. Since the Debtor's belated 2006 and 2007 "filing" or "giving" of  returns to the IRS in 2010 constitutes a "return" for purposes of section 523(a)(1)(B)(i), the debts are dischargeable.

Congress's attempt in BAPCPA to bring clarity to the issues raised in this adversary proceeding has unfortunately created more ambiguity. Courts have differing views on whether section 523 includes a timeliness requirement of the Internal Revenue Code and further disagreement about

whether the term õapplicable lawö includes analysis under the pre BAPCPA *Beard* test.

Some courts have interpreted the BAPCPA's addition of the Hanging Paragraph to mean the end of the *Beard* Test and opine that timeliness is an õapplicable filing requirementö so that late-filed tax forms can never qualify as õreturnsö for purposes of section 523(a)(1)(B)(i). *Eg. In re: Fahey,* 779 F3d 1, 4-11 (1st Cir. 2015)(interpreting state law); *McCoy v. Miss. State Tax Comm'n (In re McCoy)*, 666 F.3d 924, 929õ30(5th Cir. 2012), *cert. denied,* 113 S.Ct. 192 (2012); *Casano v. IRS (In re: Casano)*, *473 B.R. 504, 507 (Bankr.* E.D.N.Y.)**3***Creekmore v. Internal Revenue Service (In re Creekmore)*, 401 B.R. 748 *(Bankr.N.D.Miss.2008)*. The Internal Revenue Code (õIRCö)requires taxpayers to file income tax returns by the fifteenth of April each year for the preceding taxable year, unless they have filed for an extension. Analyzing the text of the IRC, these courts reasoned that the õapplicable filing requirementsö includes the requirement that the return be timely filed. These courts thus conclude that any late filed return does not comply with the IRC's filing requirements, and therefore does not constitute a õreturnö under nonbankruptcy law.

This interpretation, often described as the õOne Day Late Ruleö, should not be adopted by this Court for both legal and equitable reasons. Courts following the One Day Late Rule hold that debtors who file their own tax returns on April 16, as little as one day after the statutory due

---

3 In *Casano*, Judge Eisenberg invoked a *per se* rule interpreting the BAPCPA changes as automatically disqualifying any taxpayers against whom SFR tax assessments were made from later filing legitimate Forms 1040. The *Casano* opinion does not provide much analysis nor explain why the second sentence found in the Hanging Paragraph referencing 6020(b) (as not qualifying as a return) supersedes or negates the first sentence of the Hanging Paragraph stating õ[f]or purposes of this subsection, the term ÷returnø means a return that satisfies the requirement of applicable non-bankruptcy law (including applicable filing requirements).ö The *Casano* Court should have read the second sentence of the Hanging Paragraph as further defining or qualifying the first sentence. In this paragraph Congressed explained that, for purposes of interpretation, one should apply õthe requirements of applicable nonbankruptcy law,ö and simply clarified that section 6020(a) return qualifies whereas a section 6020(b) return does not, the same as pre-BAPCPA law. Although In re Casano was issued in 2012 by the Judge Eisenberg while sitting as a Bankruptcy United Judge for the Eastern District of New York, this Court is not bound by *In re: Casano,* and should not adopt the legal ruling enunciated therein.

date, would be unable to discharge their tax debt in bankruptcy because one day late returns do not literally satisfy ӧapplicable filing requirements.ӧ

The One Day Late Rule should not be followed by this Court since it is inequitable and contrary to the meaning of section 523. *E.g In re: Briggs, 511 B.R. at 715; In re Martin*, 508 B.R. at 726. In fact, the IRS, in its memorandum in support of its motion for summary judgment in this case devotes a considerable amount of discussion urging this Court also not to adopt the ӧOne Day Late Rule.ӧ (IRS Memorandum of Law in Support of Motion for Summary Judgment pages 11-15).

The One Day Late Rule carries the harsh result of excepting from discharge the debts associated with all late filed returns; even such returns are filed only one day late. Courts have criticized the draconian result of this line of cases, noting it does ӧtoo much violence to the statute.ӧ *Eg. In re: Briggs, 511 B.R. at 714 (quoting Brown v. Mass. Dep't of Revenue (In re Brown), 489 B.R. 1, 5–6 (Bankr.D.Mass.2013) aff'd sub nom. Gonzalez v. Mass. Dept. of Rev. (In re Gonzalez), 506 B.R. 317 (1st Cir. BAP 2014) and aff'd, 2014 WL 1815393 (1st Cir. BAP Apr. 3,2014).* These courts conclude that the ӧapplicable filing requirementsӧ address the form and content of a filing rather than the timeliness of its filing. *In re: Briggs, 511 B.R. at 714 (*citing *In re Gonzalez*, 506 B.R. at 328 (ӧ[T]he definition of ⸗returnø in the ⸗hanging paragraph,ø Section 523(*), appears to be grounded on what is filed rather than when it is filed because it specifically includes a late filed return under Section 6020 of the Internal Revenue Code.ӧ).

It is virtually impossible to harmonize the one day late interpretation with the hanging paragraph's second sentence. *In re Martin*, 508 B.R. at 727 (citing *In re: Wogoman*, 475 B.R. at 248́49. The one day late result requires reading the hanging paragraph's first sentence in isolation

18

and without regard to the second sentence. *In re Martin*, 508 B.R. at 727 (citing *In re: Wogoman)*, 475 B.R. at 248). As aptly stated by the *Martin* Court:

> if the first sentence of the hanging paragraph is construed to support the one day late result (i.e., excluding any late filed document from the definition of a ôreturnö), then that interpretation is internally inconsistent with the second sentence's reference to an IRC § 6020(a) return, and it also renders the second sentence's reference to an IRC §6020(b) return meaningless. This is because returns filed pursuant to both IRC §§6020(a) and 6020(b) are necessarily ôlateö returns. The IRS would not even prepare these ôsubstituteö returns until some time after the taxpayer has failed to timely file his or her own return (i.e., once the April 15 statutory deadline has passed). See IRC §6020(a), *728 (b)(1)=I.R.S. Chief Couns. Notice CCó20106016, 2010 WL 3617597 (Sept. 2, 2010) (noting that an IRC § 6020(b) return ôis always prepared after the due dateöí .

> Thus, it is contradictory to impose *McCoy's* strict temporal condition in the definition of ôreturn,ö while including a necessarily late IRC § 6020(a) return as one of those ôreturns.ö By the same logic, there is also no need for the hanging paragraph to specifically exclude a necessarily late IRC § 6020(b) return if the general definition of ôreturnö in the first sentence already excludes all late filed returns. Conversely, if the first sentence of the hanging paragraph is interpreted to not impose a temporal condition in the definition of a tax return, then the first and second sentences of the hanging paragraph can be read in harmony with one another. The hanging paragraph would be internally consistent, and neither sentence would render the other meaningless. *In re Martin*, 508 B.R. at 727 (citing *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 366 F.3d 692, 700 (9th Cir.2004)*.

Additionally, Congress has already addressed the ôtime of filingö question in another manner, which further supports the conclusion that timely filing is not a ôrequirementö in the hanging paragraph. Specifically, the Bankruptcy Code addresses the effect of a late filed return in section 523(a)(1)(B)(ii). Therefore, the One Day Late Rule would render section 523(a)(1)(B)(ii) meaningless. *In re: Martin,* 508 B.R. at 728 (citing *In re: Rhodes,* 498 B.R. at 366).

Pursuant to section 523(a)(1)(B)(ii), a tax debt is not discharged if a return was filed

after its due date (i.e., it was untimely) and within two years prior to the bankruptcy filing. For the purposes of defining that "return," the definition in the Hanging Paragraph applies to both subsections (i) and (ii) of 523(a)(1)(B). *In re Martin*, 508 B.R. at 728 (citations omitted).  "However, if the hanging paragraph is interpreted to make timely filing a requirement in the definition of a tax return, thus excluding all returns that are not filed on time, then a creditor has no need to ever resort to the two year rule long recognized in § 523(a)(1)(B)(ii)." *Id.* at 728-29 (citations omitted). *See eg In re: Briggs, 511 B.R. at 715; In re: Rhodes,* 498 B.R. at 366 ("Thus, if timeliness is part of -applicable filing requirements' ..., a late filed return is not a -return' for clause (ii) of § 523(a)(1)(B) either.").

The IRS acknowledges that the One Day Late Rule "fails to make sense  [and]  is troublesome because it would produce overly harsh results  " (IRS Memorandum of Law in Support of Motion for Summary Judgment pages 11- 13).  In so doing, the IRS has implicitly conceded that timely filing (i.e. by April 15) is not a "requirement" for a tax return under applicable nonbankruptcy law.

In conclusion, because the One Day Late Rule would (1) make it impossible to read the first and second sentences of the hanging paragraph in harmony, (2) render § 523(a)(1)(B)(ii) superfluous, this Court should not adopt the One Day Late Rule, and instead, should conclude that timely filing is not a "requirement" for determining what constitutes a tax "return" for dischargeability purposes. *Eg. In re Martin*, 508 B.R. at 729.

**The Official Position of the Internal
Revenue Service is Not Supported**

**by Statute, Case Law, or Public Policy**

In its memorandum of law in support of its motion for summary judgment, the IRS is asking this Court to adopt its administratively created rule which provides, in essence, that a late filed tax return can still constitute a "return", within the meaning of section 523(a)(1)(B) and the Hanging Paragraph, up until the time that the IRS makes an assessment and commences collection efforts for the relevant tax year. The IRS' official position, as set forth in The Office of Chief Counsel of Internal Revenue Service's Notice, dated September 2, 2010, and Interoffice Memorandum, dated September 28, 2011, copies of which are attached hereto as **Exhibit "A,"** (the "IRS' Rule") is that once an SFR tax assessment is made against a taxpayer, the portion of the tax liability up to the amount of the SFR tax assessment is nondischargeable. Should a taxpayer later "file" or "give" a return after the SFR assessment, then, after the two (2) year requisite period, the portion exceeding the SFR tax assessment is dischargeable.[4]

The IRS' Rule is not supported by either binding case law or by BAPCPA. Since Congress did not see fit to adopt the IRS' Rule, the courts should similarly refrain from accepting the IRS' Rule. There is nothing in the language of section 523(a) itself or the legislative history thereof which supports or any applicable case law which supports the IRS' Rule. Thus, it should be rejected by this Court because it is a judicially created fiction that lacks any support in the "applicable nonbankruptcy law" (i.e., the relevant tax statutes, regulations, and case law). Further, the IRS' Rule puts the IRS in complete control of the issue of timeliness and the ultimate result of

---

[4] Ironically, were this position correct and followed by this Courts, it would discourages taxpayers from "making an honest and reasonable attempt to satisfy the requirements of the tax law" by filing legitimate returns unless they are reasonably certain they can pay off the full liability (and hence, wish to reduce the overall tax liability to its proper amount).

nondischargeability. To simply tie the definition of what constitutes a "return" to the timing of the IRS' assessment would yield "totally arbitrary and potentially unconscionable results." *In re: Martin*, 508 B.R. at 731. Recently, Bankruptcy Judges sitting in the Jacksonville Division of the Middle District of Florida have rejected this view. See, *Mim v. United States of America*, Adv. No. 3:12 ap 00696P MG (Bankr, M.D. Fla. 2013)(Doc.# 31)=*Bell v. United States of America*, Adv. No. 3:12 ap 00693PMG (Bankr. M.D. Fla. 2013)(Doc.#26) See also, *In re: Martin*, 508 B.R. at 731; *In re Briggs*, 511 B.R. at 711-12; *In re Rhodes*, 498 at 362 (all expressly rejecting the IRS' Rule).

The IRS' Rule lacks any logical basis to distinguish between returns filed or given pre SFR tax assessment versus returns filed or given post SFR tax assessment. Such an interpretation unfairly penalizes debtors when there is absolutely no language in section 523, the Legislative History of section 523(a), or elsewhere that Congress intended to penalize United States citizens merely because the IRS went through the steps of determining a taxpayer's tax liabilities pursuant to its authority under 26 U.S.C. §6020(b). If this was Congress' intent, certainly it could have drafted section 523(a) to so state=and clearly it would have warranted a mention in the Legislative History to section 523(a).

As acknowledged by the IRS in the affidavits in support of its motion for summary judgment in this adversary proceeding, most SFR tax assessments are based solely upon third party informational returns within its system, such as the Forms W2, Wage and Income Tax Statement, the series of Forms 1099, Schedule K1, Shareholder's Share of Income, Credits, Deductions, etc., upon which the IRS calculates a liability. The IRS is only required to send the Statutory Notice of Deficiency to a taxpayer's "last known address." With a mobile society, and since SFRs involve only

taxpayers who have failed to file tax returns, many of these Statutory Notices of Deficiency are being issued, but not received by the taxpayers. These taxpayers only learn about the SFR audit procedures and assessments years after the assessments are made.

As set forth in the Debtor's Statement of Undisputed facts, the Debtor had long moved away from his last known address when the IRS mailed him the statutory notices. The Debtor in this case, as many other taxpayers, was never given the opportunity to cooperate with the IRS. Consequently, the wholly arbitrary distinction drawn by the IRS' Rule is contrary to the longstanding precedent that exceptions to discharge are to be narrowly construed since the public policy is to give debtors a "fresh start" under their constitutionally protected right to file bankruptcy. *Eg. Gleason v. Thaw*, 236 U.S. 558, 562 (1915) (exceptions to discharge "should be confined to those plainly expressed ...").

In light of the above stated policy to strictly construe dischargeability exceptions against the creditor, this Court should decline to adopt the IRS' Rule, which would provide for a definition of "return" that essentially puts the dischargeability "trigger" entirely in the hands of the IRS creditor. *See In re: Martin*, 508 B.R. at 730. Although the IRS' Rule focuses on one particular date to determine whether a return has been filed, the date that IRS makes an assessment, "that date is a moving target that is ultimately controlled by the IRS." *Id*.

> Other than the statutory restriction in IRC § 6213(a), which compels the IRS to wait 90 days after mailing the deficiency notice before making its assessment, the IRS appears to have unfettered discretion in deciding when to initiate the assessment process (once those 90 days have run). With this discretion, the IRS could potentially mail a deficiency notice to a debtor, who did not file his or her tax return by the April 15 due date, on the next day, April 16, and proceed to assess the debtor's tax liability on the 91st day after that. Under the post assessment approach [the IRS' Rule], the tax debt would hypothetically become nondischargeable even if the debtor otherwise

23

made a reasonable attempt to file his or her return 92 days after the April 15 due date, but one day after the IRS has made its assessment. At the same time, a return filed years after its due date, as had occurred here, would be treated as a return for dischargeability purposes so long as the IRS has not yet made its assessment. The post assessment approach [the IRS's Rule] is simply too arbitrary in its application and grants too much power to the IRS to control the timing of the dischargeability issue." *Id* at 730-731.

For all these reasons, this Court should not adopt the IRS's Rule as support for the IRS's position that the time of filing is a "requirement" in the Hanging Paragraph's definition of a tax return for dischargeability purposes.

**This Court Should Follow the Line of Cases**
**Which Continues to Apply the Beard Test**

The Debtor submits that the better view, and that the one that this Court should follow, is that of the courts that have post BAPCPA continued to apply the Tax Court's *Beard* Test which hold that the *Beard* Test represents the "applicable nonbankruptcy law" referred to in the Hanging Paragraph (the "No-Time-Limit Rule"). See, *In re: Briggs*, 511 B.R. 707, 716-719 (Bank. N.D. Ga. 2014); *In re Martin,* 508 B.R. at 731. *In re Rhodes*, 498 B.R. at 369 (adopting *Colsen* version of *Beard* Test)= *Brown v. Mass. Dep't of Revenue* (In re Brown), 489 B.R. 1, 566 Bankr.D.Mass.2013), aff'd on other grounds sub nom. *Gonzalez*, 506 B.R. 317. These courts, in cogently analyzing section 523(a) and the Hanging Paragraph, rejected the One Day Late Rule and the IRS's Rule as being inconsistent with the *Beard* test, and found that whether or not SFR tax assessments were made is irrelevant. These Courts opine that the a court need only focus on the tax returns themselves in determining whether the fourth *Beard* factor has been met.

Under the No Time Limit Rule, the *Beard* Test is considered as part of the "applicable

nonbankruptcy lawö referenced in the Hanging Paragraph. *Eg. In re Martin,* 508 B.R. at 731; *In re: Briggs*, 511 B.R. at 716-719. These courts have rejected what they termed a õtemporal restriction.ö *Eg. In re Martin,* 508 B.R. at 731; *In re: Briggs*, 511 B.R. at 716-719. The conclusion that that the fourth *Beard* criterion contains no mention of timeliness was reached by the Court of Appeals for the Eighth Circuit in *In re: Colsen*, 446 F.3d 836, 840 (8th Cir. 2006). The No Time Limit Rule represents the better analysis of the original *Beard* Test that more closely follows the actual requirements of applicable nonbankruptcy law (including applicable filing requirements) that make a return a õreturn.ö *In re Martin,* 508 B.R. at 731 (quoting *In Re: Rhodes*, 498 B.R. at 369). Therefore, the fact that the Debtor filed his Form 1040s after the IRS made its assessments is irrelevant in the courtøs application of section 523(a)(1)(B)(i).

A filing that satisfies the *Beard* test of what constitutes a õreturnö must: (1) purport to be a return= (2) be executed under penalty of perjury= (3) contain sufficient data to allow calculation of tax= and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *Beard*, 82 T.C. at 766. In the case at bar, the Debtor's late filed returns for 2006 and 2007 purported to be a return and were executed under penalty of perjury. As a result of the IRSøreceipt of the 2006 Form 1040 on December 27, 2010, the IRS assessed additional tax against the Debtor, in the amount of $1,311.00, for the Debtorøs 2006 taxable year, and the IRS assessed the following penalties/additions to tax: an estimated tax penalty of $62.16, and a delinquency penalty of $294.97. (See, paragraph 27 of IRSø Statement of Undisputed Facts filed on May 8, 2015 in this adversary proceeding (ECB#29)). As a result of the IRSøreceipt of the 2007 Form 1040 and Amended 2007 Form 1040 on December 27, 2010, the IRS assessed additional tax, in the amount of $4.00. (See,

paragraph 36 of IRS' Statement of Undisputed Facts filed on May 8, 2015 in this adversary proceeding (ECB#29)). Additionally, as a result of the IRS' receipt of the Form 1040X, the IRS abated tax on February 28, 2011, in the amount of $350.00, for the Debtor's 2007 taxable year, and abated a delinquency penalty, in the amount of $78.75. (See, paragraph 37 of IRS' Statement of Undisputed Facts filed on May 8, 2015 in this adversary proceeding (ECB#29)). These additional assessments for 2006 and 2007 and abatement for 2007 demonstrate that the information contained in the late filed returns was sufficiently reliable to allow the IRS to calculate the Debtor's tax liability. Thus, scrutiny of the Debtor's late filed return under the *Beard* test turns on the fourth element of the test, whether the return is "an honest and reasonable attempt to satisfy the tax laws."

Although the IRS opposes the *Colsen* Court's No Time Limit Rule, it has not identified any "applicable nonbankruptcy law" that requires a return to be filed by a certain time in order to qualify as a "return." See *Hindenlang*, 164 F.3d at 1033 (acknowledging that the Internal Revenue Code "does not specify when a late tax form will no longer qualify as a return under the tax law"). As discussed in *Colsen*, such a temporal filing requirement does not actually exist within the fourth element of the original *Beard* Test, *see id*. at 840. Therefore, the IRS cannot rely on *Hindenlang* and its progeny. *See In re Martin,* 508 B.R. at 732.

Additionally, the IRS has not cited any other tax statutes, regulations, or case law that otherwise mandates or intimates that there a temporal requirement for filing returns. *See In re Martin,* 508 B.R. at 732. The only temporal consideration that the *Martin* Court could find in the tax law is the April 15 filing deadline under IRC § 6072(a). *Id*. However, the *Martin* Court noted that:

> unlike other requirements imposed by applicable tax law, a taxpayer's failure to timely file a return by this statutory deadline does not defeat the purpose of the return or

26

render it a nullity=the late filing is simply grounds to impose additional penalties and interest on the taxpayer. See IRC § 6651(a) (1). A return filed on April 16 is still accepted as a return by the IRS. Furthermore, courts, including the Supreme Court, have recognized that perfect compliance with the applicable tax law in certain situationsô more significant than filing a return lateô is not required for a return to be deemed valid. See *Zellerbach Paper*, 293 U.S. at 180, 55 S.Ct.127 (õPerfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law. This is so though at the time of filing the omissions or inaccuracies are such as to make amendment necessary.ö (citation omitted))=*v.Comm'r*, 100 T.C.M. (CCH) 459, at *7ó8 (2010) (finding that valid return was filed even though taxpayers claimed frivolous deduction that brought their tax liability down to zero).

*In re Martin,* 508 B.R. at 732.

õ[D]espite the supposed ÷requirementøthat a tax return be filed before the IRS makes its assessment, the IRS's own actions suggest that this is not actually a õrequirementö within the meaning of the hanging paragraph after all. A ÷requirementø means ÷something essential to the existence or occurrence of something else.øö *In re Martin,* 508 B.R. at 732 (quoting Webster's New Explorer Encyclopedic Dictionary 1561 (Federal Street Press 2006)). õThus, to give meaning to the statutory term ÷requirementsø in the hanging paragraph, a document should be considered a ÷return that satisfies the requirements of applicable nonbankruptcy lawø only if the document meets allô not someô of the requirements to becoming a return.ö *In re Martin,* 508 B.R. at 732-733.

In the case at bar, notwithstanding the IRS purported temporal õrequirementö and the Debtorøs failure to comply with it, the IRS nevertheless accepted and recognized the Debtor's Form 1040s for 2006 and 2007 as legitimate õreturnsö when it increased the assessed tax liability for 2006 and 2007 and partially abated the tax liability for 2007. See IRC § 6201(a)(1) (requiring the IRS to õassess all taxes determined by the taxpayer or by the [IRS] as to which returns or lists are made

under this title" (emphasis added))=IRC § 6404(b) (providing that a taxpayer is not entitled to file a "claim for abatement"); *see also Colsen,* 446 F.3d at 840–41 (noting that the "information contained in the [debtor's Form 1040s] was honest and genuine enough to result in thousands of dollars of abatements of tax and interest" and that the "IRS apparently ha[d] found [the] post assessment returns useful").

By accepting and processing the Debtor's Form 1040s for 2006 and 2007, the IRS effectively acknowledged that those documents did not have to be filed before the assessments in order for the documents to become allegedly sufficient tax returns for tax purposes. S*ee In re Martin,* 508 B.R. at 733.  Otherwise, the Debtor's post assessment Form 1040s should have been rejected by the IRS as legal nullities. *See id* (citing **Treas. Reg. § 1.601161(b)** (providing that if a taxpayer does not "carefully prepare his return and set forth fully and clearly the information required to be included therein," then that return "will not be accepted as meeting the requirements of the [Internal Revenue] Code" by the IRS). "The IRS cannot pick and choose which considerations, such as the time of a tax return's filing, will count as a 'requirement' under different circumstances. Since the hanging paragraph specifically adopts 'applicable nonbankruptcy law', a 'return'for tax purposes should also be a 'return'for bankruptcy purposes." *In re Martin,* 508 B.R. at 733

Moreover, the plain language and construction of section 523(a)(1)(B) do not support incorporating therein consideration of the timeliness of filing or the surrounding circumstances. *Eg. In re: Briggs,* 511 B.R. at 719.  'Section 523(a)(1)(B(i) excepts debt for taxes for which a required return 'was not filed or given.'Section 523(a)(1)(B(i) does not read 'was not filed or given until after the debt was assessed' or 'was not filed or given at a time where it could have utility to the taxing

28

agency.ø If Congress wanted to include this kind of language or limitation, it could have done so. While the definition Congress did provide was less than clear, incorporating timeliness into the definition of a return, under either a plain reading of Section 523(a)(*) or the Beard test, is illogical and inconsistent with the construction of the statute.ö *In re: Briggs*, 511 B.R. at 719.

The Tax Court's treatment of the öhonest and reasonableö element of the *Beard* test also supports the No Time Limit Rule. *Id.* These Tax Court cases look at the nature and form of the information contained in the filing to decide if the taxpayer was honestly trying to provide the required information. *Id.* Therefore, the focus of the öhonest and reasonableö inquiry under the *Beard* test should concern only whether the Debtor's filing represents his honest attempt to reasonably convey accurate information regarding his wages, deductions, and allowances. *Id.*

In this case, as described above, and in both the IRSø and Debtorøs undisputed statement of facts in support their respective motions for summary judgment, the IRS did, in fact, accept the Debtor's late filed Form 1040s for 2006 and 2007 and adjusted his tax liability accordingly. Additionally, in its motion for summary judgment, the IRS has not presented any evidence to show that the Debtor's 2006 and 2007 filings were not an öhonest and reasonable attempt to satisfy the tax lawsö5. As such, this Court should conclude that the Debtor has demonstrated, as a matter of law, that his 2006 and 2007 tax filings are öreturnsö, within the meaning of section 523(a).

## CONCLUSION

---

5 Should this Court require an analysis of the öhonest and reasonableö requirement that includes a subjective inquiry into the debtor's circumstances at filing, in addition to the content of the returns filed, the accompanying affidavit of Adam Selbst, sworn to on June 4, 2015 (the öSeblst Affidavitö) establishes that the Debtor did not flagrantly ignore his obligation to timely file tax returns for 2006 and 2007. Rather the Selbst Affidavit establishes that a serious addiction illness was the cause of his not filing these returns in a timely manner. After undergoing years of treatment for this illness, the Debtor was able to address all of his responsibilities, including filing tax returns.

Based on the foregoing, this Court should find that the Debtor's Form 1040 tax returns for the years 2006 and 2007 were "returns" within the meaning of section 523(a)(1)(B)(i) and section 523(a)'s hanging paragraph. This Court should decline to adopt either the One Day Late Result or the IRS' Rule to define what constitutes a tax return for purposes of determining dischargeability of the tax debt. Instead, the Court should adopt the No Time Limit Rule interpretation to conclude that the "requirements of applicable nonbankruptcy law (including applicable filing requirements)" do not include a temporal restriction.

Accordingly, it is respectfully submitted that this Court deny the IRS's Motion for Summary Dismssing the Complaint as to 2006 and 2007, and instead will enter judgment, in favor of the Debtor, declaring that his 2006 and 2007 federal income tax debts were discharged in this chapter 7 bankruptcy case.

**DATED:**   New York, New York
        June 5, 2015

                    SHAFFERMAN & FELDMAN LLP
                    Counsel for the Plaintiff
                    137 Fifth Avenue, 9th Floor
                    New York, New York 10010
                    (212) 509-1802

                    By:  /S/ Joel Shafferman
                         Joel M. Shafferman (JMS-1055)

30